CHARLES K. CANNON, executor &c. of Garrit S. Cannon, deceased,

*v.*

ADAM WRIGHT et al.

1. The owner of a mortgage, by an unrecorded assignment, is bound by proceedings in foreclosure of a prior mortgage in this court, to which his assignor was made a party defendant by reason of his apparent ownership of the mortgage, so far as the mortgaged premises are concerned, although he was not a party to such proceedings.

2. Although the decree in such foreclosure proceedings may have been founded upon misconception of fact, it cannot be challenged collaterally. It must be attacked, if at all, by direct application to the court that made it, or in due course of appellate procedure.

---

Final hearing on bill, answers, replication and proofs.

*Messrs. Gilbert & Atkinson*, for the complainant.

*Mr. Mark R. Sooy*, for the answering defendants, Hinkle and Carslake.

THE CHANCELLOR.

The complainant seeks the foreclosure of a mortgage for $1,000, made by Samuel Asay, to the administrators of the estate of Adin Atkinson, deceased, in April, 1876. The defence to the suit is, that the property mortgaged has been sold under an existing decree of this court, in a suit for the foreclosure of a prior mortgage, by which the complainant is bound, and that the lien of his mortgage is lost.

The facts, as they appear by the bill, answers and proofs, shortly stated, are as follows:

In April, 1871, Samuel Asay being the owner of a farm situate in the township of Chesterfield, in Burlington county, containing about ninety acres of land, mortgaged it to one John Childs to secure the payment of $4,000. The mortgage was duly recorded on the 6th day of the same month. Afterwards, in October, 1874, the executors of Childs assigned the mortgage to Catharine A. Childs. And, on the 30th of June, 1885, Catharine A. Childs assigned it to J. Henry Childs, and, on the 1st of July, 1885. J. Henry Childs assigned it to Elizabeth A. Hinkle. All of these assignments were duly recorded.

On the 1st day of April, 1876, Samuel Asay executed a second mortgage of the same farm to the administrators of the estate of Adin Atkinson, deceased, to secure the payment of $1,000, which mortgage was duly recorded on the 11th day of the same month. In May, 1883, this $1,000 mortgage was assigned to John D. Johnson, guardian of Elizabeth S. Atkinson, the assignment being duly recorded on the same day. Afterwards, in September, 1884, Johnson, as guardian aforesaid, assigned the mortgage to Garrit S. Cannon. Mr. Cannon died in 1886. The assignment to him was not recorded until November 1st, 1890, after the foreclosure suit of the Hinkle mortgage, the conveyance to the defendant Wright, and the mortgage by him hereinafter mentioned.

On the 1st of December, 1879, Samuel Asay and wife con-veyed the farm to Robert N. Parker, and on the same day Parker and his wife gave back to Asay a purchase-money mort-gage upon the premises to secure the payment of $2,000. This mortgage was duly recorded and subsequently assigned to Nathan Carslake and Henry R. Gilbert by assignment, which was duly recorded.

By divers mesne conveyances, the title to the farm became vested in Joseph S. Deputy, in 1888, subject to the three mort-gages above mentioned.

On the 4th of April, 1890, Elizabeth A. Hinkle instituted a suit in this court for the foreclosure of her mortgage, the first mortgage upon the farm, to which suit Deputy, as the owner of the equity of redemption, and Elizabeth S., his wife, Nathan Carslake and Henry R. Gilbert, as the holders of the third mortgage for $2,000, William T. Potts, the tenant in possession of the farm, and John D. Johnson, guardian of Elizabeth S. Atkinson, who, by the record, appeared to be the holder of the second mortgage, were made defendants. The complainant in the present suit, who, at that time, was the owner of the mort-gage last mentioned, was not made a party.

No answers were filed in that suit, and a decree *pro confesso* against all the defendants, with an order of reference to a master to ascertain and report the amounts due upon the several mort-gages, including the complainant's, was made therein. After-wards, the defendant Johnson, guardian as aforesaid, was summoned before the master, and there made affidavit, appar-ently under misapprehension as to the mortgage he represented in that suit, that a mortgage, identified by him, upon other property, had been paid. The fact that Johnson referred to another mortgage than that which was in question in the suit appears to have escaped the attention of the master, the solicitor who prepared the final decree, and the court itself in pronounc-ing the decree. It is in evidence that at a conversation with the solicitor of the complainant in that suit, at about the time when the suit was commenced, Johnson stated that the mortgage of $1,000, described in the bill, had been paid. Johnson, admitting

this conversation, states that he, at that time, forgot the fact that the mortgage had been assigned and believed that it had been paid.

The final decree in that suit, in terms, absolutely foreclosed Johnson from all equity of redemption in the mortgaged premises.

Afterwards, upon execution issued under the decree last mentioned, on the 24th of September, 1890, the farm was sold to raise and pay, in the first place, to Elizabeth A. Hinkle the sum of $4,325, besides costs of the action and the sheriff's execution fees; and, in the second place, to pay to Carslake and Gilbert, $2,194.33. Nothing was ordered to be paid to Johnson, the mortgage represented by him having been regarded as paid. The property was bought in by Elizabeth A. Hinkle for $4,000, a sum not sufficient to pay the costs and sheriff's fees and amount due upon her mortgage.

On the 2d of October, in the same year, Elizabeth A. Hinkle conveyed the farm to Nathan Carslake, who, in turn, on the same day sold it to Adam Wright, taking from Wright a purchase-money mortgage for $5,000.

There is no intimation of fraud either in the foreclosure by Elizabeth Hinkle, or in her purchase at the sheriff's sale, or in the conveyances subsequent to that sale. The complainant fails to make any allegation in his bill concerning the foreclosure proceedings and decree which led to the conveyance of the farm by the sheriff to Elizabeth A. Hinkle, contenting himself with the mere statement that the sheriff made such a conveyance upon the 24th of September, 1890, and charging that, in virtue thereof, Elizabeth A. Hinkle claimed to have some interest in the farm which was subject to his mortgage. The proceedings in the Hinkle foreclosure are set up in the answers, which allege that Johnson made oath before the master that the $1,000 mortgage had been paid, without intimating that Johnson made a mistake by referring to a different mortgage. Johnson's mistake appeared, subsequently, upon the production of the record in the Hinkle suit and in taking the proofs.

Cannon v. Wright.

The question first presented is, whether the complainant's mortgage was cut off by the decree in the Hinkle foreclosure. The statute (*Rev. p. 118 § 78*) provides that, in any suit for the foreclosure of a mortgage, persons claiming an interest in or encumbrance or lien upon the mortgage premises, by or through a conveyance, mortgage, assignment, lien or other instrument, which by provision of law could be recorded, and which shall not be recorded, shall be bound by the proceedings in such suit, so far as the property is concerned, in the same manner as if he had been made a party to and appeared in the suit and the decree therein had been made against him as one of the defendants therein, and elsewhere (*Rev. p. 708 § 32*) that the assignee of any mortgage by an assignment or assignments not recorded, shall be bound by the proceedings and sale in any foreclosure suit against any previous holder of the mortgage.

Under these statutory provisions, the assignment to Cannon not having been recorded before the Hinkle foreclosure, the complainant was not a necessary party to that suit. The suit was a proceeding *in rem*. Johnson, who appeared by the record to be the owner of the complainant's mortgage, was the person recognized by law as the representative of that mortgage and he was duly made a party to the action. The complainant's interest was bound by the decree. *Dinsmore* v. *Wescott, 10 C. E. Gr. 302; Raymond* v. *Post, 10 C. E. Gr. 447; Lamb* v. *Cannon, 9 Vr. 362; Leonard* v. *New York Bay Co., 1 Stew. Eq. 192; S. C. on appeal, 1 Stew. Eq. 467; Gerard* v. *Birch, 1 Stew. Eq. 317.*

It is insisted, however, that the decree is erroneous, in that, in substance, it adjudges that the complainant's mortgage has been paid, when in fact it has not been paid or satisfied. The answer to this insistment is, that the complainant cannot in this proceeding, collateral to the suit in which that decree was made, attack the decree. In that foreclosure suit this court had jurisdiction of parties representing all interests in the mortgaged premises, including the interest of the complainant under his mortgage. It also had jurisdiction of the subject-matter of the suit, and the decree it pronounced was within the scope of the pleadings before it. Such a decree, however erroneous, cannot

Cannon v. Wright.

be attacked in a collateral proceeding. In *Eisberg* v. *Shultz, 1 Stew. Eq. 293,* Vice-Chancellor Van Fleet said: "A court of general jurisdiction may misconstrue, misapply or plainly disobey the law in pronouncing judgment, yet, so long as its judgment remains unreversed, it unalterably binds the parties and pronounces the law which defines and determines their rights in that particular case." This is but a reiteration of the law as it is established in this state. In *McCahill* v. *Equitable Life Assurance Society, 11 C. E. Gr. 531,* Chief-Justice Beasley said: "If even admittedly erroneous, such error cannot be set up in a collateral proceeding against the decree founded upon it. * * * The legal rule is this: that the decision of a domestic court of general jurisdiction, acting within the scope of its powers, has inherent in it such conclusive force that it cannot be challenged collaterally, and that such decision definitely binds all parties embraced in it, unless an objection made to the court itself or in direct course of appellate procedure."

This situation effectually precludes me from granting the relief which the complainant now seeks. His remedy is by direct application to this court to open its decree and permit him to become a party and assert his right, and his success in such an application must depend largely upon circumstances which may not here appear or are not here fully shown. In such an application he must, among other things, excuse the delay which appears to constitute laches on his part.

In *Leonard* v. *New York Bay Co., 1 Stew. Eq. 192,* one Jane Cawley, who held property by unrecorded deeds and had been cut out by foreclosure against her grantors, who were parties to the foreclosure suit, applied for leave to come in as a defendant, vacate the enrollment, set the sale aside as to her land, open the decree upon the original and supplemental bills and defend her right. She claimed that the purchasers at the sale knew of her claim and that their purchase did not work a substantial change of title. It was held, in view of the statutes to which I have referred, that it was not necessary to make her a party to the foreclosure suit, and, in this court, it was also held, that she was guilty of laches, which would preclude the court from granting

her application; but the court of errors and appeals afterwards (*S. C. sub nom. Cawley* v. *Leonard, 1 Stew. Eq. 467*) decided that the mere lapse of time was not sufficient to take away her right to be heard in a court of equity where mere delay cannot be said to constitute laches, there being no intervening rights of others to be unjustly disturbed.

The application is addressed to the sound discretion of the chancellor. *National Bank of Metropolis* v. *Sprague, 6 C. E. Gr. 458; Smith* v. *Alton, 7 C. E. Gr. 572; Mutual Life Ins. Co.* v. *Sturges, 6 Stew. Eq. 330.*

Upon the hearing on the merits, after the application is granted, all equities, original and intervening, will be considered and adjusted.

The complainant's bill will be dismissed, with costs.